**Opinion filed February 16, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00112-CV
_____

## ROBERT C. VILT, Appellant

## V.

## MIDLAND CENTRAL APPRAISAL DISTRICT, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. TX15936**

## M E M O R A N D U M   O P I N I O N

This appeal arises out of an order for sanctions that was entered against Appellant, Robert C. Vilt. Vilt is an attorney that entered an appearance on behalf of "William F. Shum [sic], individually and on behalf of James Wesley Schrum [sic], Deceased." The trial court found that Vilt filed a groundless pleading that led to the entry of an order distributing excess proceeds from a tax sale. As a result of his conduct, the trial court sanctioned Vilt by ordering him to pay $21,097.21 into the

registry of the court.[1]  Because we conclude that there was no abuse of discretion, we affirm.

*Background Facts*

The Texas Tax Code includes provisions that relate to the distribution of proceeds that are recovered at a tax sale which are in excess of the delinquent taxes and other fees and costs relating to the sale.  *See* TEX. TAX CODE ANN. § 34.03 (West Supp. 2022), § 34.04 (West 2015).  Pursuant to these provisions, persons with an interest in the proceeds may file a petition to claim the excess proceeds.  *Id.* § 34.04(a).  The petition must be served on all parties to the foreclosure action not later than the twentieth day before the date is set for a hearing on the petition.  *Id.* § 34.04(b).  Following the hearing, the excess proceeds are awarded to one or more parties according to a list of priorities as set out in Section 34.04(c).  That list includes those who "acquired by will or intestate succession the interest in the property."  *Id.* § 34.04(c)(5)(C).

In February 2020, the trial court signed a judgment of foreclosure in order to secure payment of delinquent property taxes that had been assessed against a tract of real property owned by James Wesley Shrum.  The trial court also entered an order of sale for delinquent property taxes.  A subsequent sale resulted in excess proceeds totaling $21,097.21.

On April 6, 2021, Vilt filed a notice of appearance and a motion to release excess proceeds pursuant to Section 34.04.  The notice of appearance indicated that Vilt represented "William F. Shum [sic], individually and on behalf of James Wesley Schrum [sic], Deceased."  The motion to release excess proceeds states that William

---

[1]As indicated in the caption of this opinion, the Midland Central Appraisal District is listed as the appellee in this case.  However, its status as the appellee is nominal because the sanctions which Vilt challenges are payable to the trial court's registry.

"is entitled to excess proceeds because he represents the Estate of James Wesley Shrum Deceased who was the owner of the subject property when it was sold."

The trial court signed an order granting the motion to release excess proceeds on the following day. Thereafter, on April 9, 2021, the Midland Central Appraisal District (the Appraisal District) filed an objection to the motion to withdraw the excess proceeds, along with a motion to set aside the order. Following a videoconference hearing on the same day, the trial court set aside the order to release the excess proceeds, and the funds were never released. Several days later, the Appraisal District filed the motion for sanctions that is the subject of this appeal.

The motion for sanctions was set for a hearing on May 17, 2021, alongside the motion to release the excess proceeds. Vilt did not appear at the sanctions hearing, nor did he attempt to contact the court to explain the reason for his absence. Present at the hearing was Gina Shrum McKinney, one of the defendants in the foreclosure action. McKinney is the daughter of James Wesley Shrum. McKinney testified that William is the brother of James. She stated that, in addition to herself, James had four other children: Wesley H. Shrum (deceased), Debra Gressett, Brenda Bright, and Pamela Fisher (deceased).

McKinney indicated that she had never heard of Vilt, that Vilt had never been hired to represent James, and that neither she nor any of her siblings or their children had been contacted by Vilt. Likewise, she knew nothing about the request for the excess proceeds to be paid to Vilt and stated that Vilt did not have authority from her or any of James's children to make a request for such proceeds.

Harvey Allen, counsel for the Appraisal District, also testified at the hearing. He stated that, based on research conducted by his firm, William did not have any interest in the property. He also indicated that no affidavit of heirship or probate had been filed in Midland County concerning James's estate. Allen also testified that the Appraisal District had incurred attorney's fees of $900 for his services in

3

connection with the work required to set aside the order to release excess proceeds. Following the hearing, the trial court entered an order denying the motion to release excess proceeds. The trial court also entered an order for sanctions, requiring Vilt to pay $21,097.21 into the registry of the trial court. By separate order, the trial court ordered Vilt to pay attorney's fees of $900.[2] This appeal followed.

*Analysis*

In his sole issue on appeal, Vilt asserts that the trial court erred in entering an order of sanctions. He contends that the trial court abused its discretion by entering the sanctions order. Vilt primarily bases his claim on appeal on the details surrounding the certificate of conference that accompanied his motion to release excess proceeds. He also asserts that a sanction of $21,097.21 is excessive when the maximum fee he could have received for his services was $1,000 under Section 34.04(i). *See id.* § 34.04(i). For the reasons stated below, Vilt is incorrect.

The trial court's order did not explicitly cite the authority for its sanction. Nevertheless, because this sanction concerns pleadings, we look to Chapter 10 of the Texas Civil Practice and Remedies Code and Rule 13 of the Texas Rules of Civil Procedure in determining whether it is proper. *See Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 362–63 (Tex. 2014). Thus, we review the trial court's sanctions order for an abuse of discretion. *Id.* at 361. "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003); *see also Foote v. Texcel Expl., Inc.*, 640 S.W.3d 574, 581 (Tex. App.—Eastland 2022, no pet.). A trial court does not abuse its discretion in levying sanctions if some evidence supports its decision. *Nath*, 446 S.W.3d at 361.

---

[2]Vilt does not challenge the award of attorney's fees.

The decision to impose sanctions involves two distinct determinations: (1) whether conduct is sanctionable and (2) what sanction to impose. *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 716 (Tex. 2020). We begin with the trial court's determination of whether Vilt's conduct is sanctionable. Rule 13 provides, in relevant part, that the signature of an attorney on a motion constitutes a certificate that he has read the motion and that, "to the best of [his] knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith." TEX. R. CIV. P. 13. A pleading is groundless if it has no basis in law or fact and is not warranted by good faith argument for the extension, modification, or reversal of existing law. *Id.* "Bad faith" is not simply bad judgment or negligence but is, rather, the conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose. *Great W. Drilling, Ltd. v. Alexander*, 305 S.W.3d 688, 698 (Tex. App.—Eastland 2009, no pet.). Courts are permitted to impose sanctions against an attorney or party for violations of Rule 13 under the terms of Rule 215. TEX. R. CIV. P. 13, 215.

Chapter 10 of the Texas Civil Practice and Remedies Code provides in relevant part that the signing of a motion constitutes a certificate that "to the signatory's best knowledge, information, and belief, formed after reasonable inquiry . . . each claim . . . in the . . . motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(2) (West 2017).

"Generally, groundless pleadings are sanctionable under either Rule 13 or Chapter 10." *Nath*, 446 S.W.3d at 369. Chapter 10 and Rule 13 each require an attorney to make a reasonable inquiry into the basis for the pleading before it is submitted. Additionally, Rule 13 requires a showing of bad faith, an intention to harass, or a knowingly false allegation to justify sanctions. *Id.*

5

The evidence before the trial court demonstrates that the motion to withdraw excess proceeds, which alleged that William represented the estate, was "groundless" (Rule 13) and was not warranted by existing law (Chapter 10). No will had been probated naming William as an heir, nor an estate proceeding filed naming William as administrator. Thus, because James had multiple children, his brother William had no interest in the property at issue under the laws of intestate succession. *See* TEX. EST. CODE ANN. § 201.001(a), (b) (West 2020). Furthermore, the testimony at the hearing demonstrated that the family had never given William the authority to act on their behalf. Vilt has not addressed, either at the trial court level or on appeal, William's lack of authority to obtain a recovery of the excess proceeds payable to James's children.

The trial court could have reasonably concluded that Vilt failed to make a reasonable inquiry regarding William's status as a representative of the estate. Specifically, the trial court could have determined that a reasonable inquiry would have included, at a minimum, an investigation into whether James had executed a will and, if so, whether William was named as an administrator or beneficiary therein. Such an investigation would have immediately led a reasonable attorney to conclude that (a) William had no interest in the estate and (b) any authority for seeking the excess proceeds would necessarily need to come from James's children, not from William.

The trial court also found that Vilt, acting in bad faith, made false statements for the purpose of inducing the court to sign an order releasing the excess proceeds. This finding is supported by the record. When a party with special knowledge of a disputed issue fails, without explanation, to testify about it, a judge may infer that the testimony would not support its claim. *Thompson v. Deloitte & Touche, L.L.P.*, 902 S.W.2d 13, 18 (Tex. App.—Houston [1st Dist.] 1995, no writ). Vilt possessed unique knowledge regarding his understanding of William's purported status as

6

representative of the estate and Williams's rights to the excess proceeds. Because Vilt did not testify or even appear at the hearing to explain his basis for making these representations, the trial court could have reasonably inferred that Vilt filed the motion with knowledge that it had no basis in fact or law.

The trial court also pointed to Vilt's absence from the May 17 hearing, along with his failure to contact the court prior to or during the hearing, as a basis for the imposition of sanctions. Vilt did not provide the trial court with any explanation for his absence because he did not appear for the hearing, and he did not file a subsequent motion for new trial. Nor did he provide an explanation in his briefing on appeal. A party's lack of any explanation for failing to appear at a hearing is a factor that may be considered when imposing sanctions. *See, e.g.*, *Luxenberg v. Marshall*, 835 S.W.2d 136, 141 (Tex. App.—Dallas 1992, no writ) (holding that sanctions were appropriate when the attorney therein had not "advanced any explanation for failing to appear at the depositions, show cause hearings, and court-ordered mediation"). Accordingly, we hold that the trial court did not abuse its discretion in sanctioning Vilt for his failure to appear at the hearing. Moreover, and based on the foregoing, we also conclude that the trial court did not abuse its discretion by finding that Vilt engaged in conduct that was subject to sanctions under Chapter 10 and Rule 13.

We now turn to the question of whether the amount of the sanctions was appropriate. "The amount of the sanction is limited by the trial court's duty to exercise sound discretion." *Low v. Henry*, 221 S.W.3d 609, 619 (Tex. 2007) (citing *TransAm. Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991)). To be just, a sanction must be based on a direct relationship between the particular offensive conduct and the sanction imposed, and the sanction must not be excessive in relation to that conduct. *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 540 (Tex. 2016); *Jurgens v. Martin*, 631 S.W.3d 385, 404 (Tex. App.—Eastland 2021,

7

no pet.). The court should ensure that the punishment "fits the crime" and that the sanction is no more severe than necessary to satisfy its legitimate purposes. *Nath*, 446 S.W.3d at 363. Legitimate purposes include securing compliance with the relevant rules of procedure, punishing violators, and deterring other litigants from similar misconduct. *Id.*

Section 10.004(c)(2) provides that a sanction may include "an order to pay a penalty into court." CIV. PRAC. & REM. § 10.004(c)(2). Because the trial court ordered Vilt to pay the sanction into the court's registry, we will review it under Section 10.004(c)(2). As noted in *Low*, the only limitation in the statute is that the "sanction must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated." 221 S.W.3d at 620 (quoting CIV. PRAC. & REM. § 10.004(b)). As a result of the lack of statutory guidance, the Texas Supreme Court in *Low* adopted a list of factors that were created by the American Bar Association (ABA) for courts to consider when imposing sanctions under Federal Rule of Civil Procedure 11. *Id.* at 620–21 n.5. The Texas Supreme Court held that the same factors should be considered in connection with sanctions under Chapter 10 of the Texas Civil Practice and Remedies Code and Rule 13 of the Texas Rules of Civil Procedure. *Id.* at 621; *see also State Office of Risk Mgmt. v. Foutz*, 279 S.W.3d 826, 838 (Tex. App.—Eastland 2009, no pet.). The factors include the following:

a. the good faith or bad faith of the offender;

b. the degree of willfulness, vindictiveness, negligence, or frivolousness involved in the offense;

c. the knowledge, experience, and expertise of the offender;

d. any prior history of sanctionable conduct on the part of the offender;

e. the reasonableness and necessity of the out-of-pocket expenses incurred by the offended person as a result of the misconduct;

f. the nature and extent of prejudice, apart from out-of-pocket expenses, suffered by the offended person as a result of the misconduct;

g. the relative culpability of client and counsel, and the impact on their privileged relationship of an inquiry into that area;

h. the risk of chilling the specific type of litigation involved;

i. the impact of the sanction on the offender, including the offender's ability to pay a monetary sanction;

j. the impact of the sanction on the offended party, including the offended person's need for compensation;

k. the relative magnitude of sanction necessary to achieve the goal or goals of the sanction;

l. burdens on the court system attributable to the misconduct, including consumption of judicial time and incurrence of juror fees and other court costs;

. . . .

n. the degree to which the offended person's own behavior caused the expenses for which recovery is sought. . . .

*Low*, 221 S.W.3d at 620–21 n.5. While the list is nonexclusive, it is helpful in guiding the often intangible process of determining a penalty for sanctionable behavior. *Nath*, 446 S.W.3d at 372. A trial court does not have to consider all of the factors to explain the basis for a monetary sanction, but it should consider all factors that are relevant. *Low*, 221 S.W.3d at 620–21. "In practice, this means that when a factor is relevant to a party being sanctioned, that factor must inform the issuance of the award." *Nath*, 446 S.W.3d at 372.

Relevant factors for consideration in this case include the good faith or bad faith of the offender, the degree of willfulness, vindictiveness, negligence, or frivolousness involved in the offense, the knowledge, experience, and expertise of the offender, and the relative magnitude of sanction necessary to achieve the goal or goals of the sanction. We have reviewed the trial court's order, and we are satisfied

that the order takes these factors into consideration. In particular, the trial court's sanctions amount was equal to the amount of the excess proceeds that Vilt had sought in the motion, which is appropriate for purposes of determining the magnitude of the sanction. We note in this regard that Vilt sought for the payment to made to him—not to his trust account for the benefit of William or to William directly. We further note that but for the prompt action of the Appraisal District's attorney, the excess proceeds in the amount of $21,097.21 would have been paid out of the registry of the court to Vilt. Had that occurred, James's children, who were pro se at the time, would have been left with the difficult task of trying to retrieve their money from Vilt and William.

The Appraisal District's motion for sanctions requested "monetary and nonmonetary sanctions" against Vilt "as the Court deems appropriate." In his briefing, Vilt argues that, because the maximum fee that he can recover in this matter is $1,000, the award of sanctions is excessive. *See* Tax § 34.04(i) (limiting attorneys' fees for obtaining excess proceeds to 25% of the amount obtained or $1,000, whichever is less). However, Vilt did not present this legal argument to the trial court. Vilt filed a written response to the motion for sanctions that only addressed the complaints and discussion regarding timing of submission of the proposed order and the certificate of conference. Vilt's response did not present an argument or legal basis for limiting the amount of sanctions. As recently noted by the Texarkana Court of Appeals, the failure to raise a complaint in the trial court that it should have considered a lesser sanction will result in the contention not being preserved for appellate review. *Manning v. Johnson*, 642 S.W.3d 871, 883 (Tex. App.—Texarkana 2021, no pet.) (collecting cases).

Even if the trial court had considered Vilt's written response, he did not address a basis for seeking excess proceeds on behalf of William. Neither did he seek to offer an explanation to this court concerning why he was seeking funds for

10

a client that was not, as a matter of law, entitled to any excess proceeds. Because the trial court did not abuse its discretion by entering the sanctions order against Vilt based on the facts that are described above, we do not reach the additional facts that were considered by the trial court concerning the matters set out in Vilt's certificate of conference that accompanied his motion to release excess proceeds.

*This Court's Ruling*

We affirm the trial court's order of sanctions.


JOHN M. BAILEY

CHIEF JUSTICE


February 16, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.